**CITIES SERVICE OIL COMPANY, as Owner of S.S. ROYAL OAK, Libelant,**

v.

**PUERTO RICO LIGHTERAGE COMPANY, as Owner of The TUG CHARLES E. DUNLAP, Respondent.**

No. 4–59.

United States District Court
D. Puerto Rico.

May 27, 1964.

Fiddler, González & Rodríguez, San Juan, P. R., for libelant.

Hartzell, Fernández & Novas, San Juan, P. R., for respondent.

RUIZ-NAZARIO, Chief Judge.

This suit in Admiralty was originally tried on April 21, 1960. Thereupon, after giving due consideration to memoranda filed by the proctors for the parties, The Court on May 8, 1961, decreed that the libel herein was stale and barred by laches, and that it therefore be, as it was dismissed.

An appeal from said decree was taken by libelant to the Court of Appeals for the First Circuit which, by its decision of July 6, 1962, vacated said decree and remanded the case to this Court for further proceedings not inconsistent with said decision.

Cities Service Oil Co. v. Puerto Rico Lighterage Co., 305 F.2d 170.

In compliance with the certified copy of said decision remitted to this Court, in lieu of mandate, and pursuant to a motion filed on October 31, 1962 by the libelant, which remained uncontested by the respondent, a new trial was ordered by this Court, as per its order of December 26, 1962.

The new trial was finally held on June 24 and 25, 1963. Most of the evidence adduced at the former trial was reintroduced and some additional evidence was produced by both parties. The Court ordered that a transcript of all the oral evidence adduced at the new trial be prepared and filed, and that proctors for the parties have until September 15, 1963 to file simultaneous briefs and ten days thereafter to reply. The last of said briefs was filed on November 29, 1963.

I have given the utmost consideration to all the evidence, oral and documentary adduced by the parties at said new trial and to the briefs filed by their proctors, and I am now duly advised in the premises.

The respondent, by its amended answer, has raised the following issues:

1. Whether its Tug CHARLES E. DUNLAP came into collision with libelant's vessel the SS ROYAL OAK at the time and place alleged in the libel, causing the latter to sustain serious and substantial damages or not.

2. In the event that the above issue is decided in the affirmative, whether respondent is liable to libelant, on account of said damage, in the amount of $15,000.00 claimed by libelant or in any lesser amount.

3. Whether the conditions of respondent's Towage Contract, under which respondent contends, in Affirmative Defense No. II of its amended answer, that "the Master and crew of the tug were the servants of the SS ROYAL OAK" are valid and enforceable against libelant in this action.

## I

■ I find that the preponderance of the credible evidence adduced at the trial supports libelant's contention that respondent's Tug CHARLES E. DUNLAP came into collision with the starboard side of libelant's vessel the SS ROYAL OAK, at about 11:45 A.M. on August 23, 1956, causing the ROYAL OAK to sustain serious and substantial damage.

■ It is a well established rule that positive-affirmative testimony is entitled to more weight than negative testimony, even when the witnesses are of equal credibility, and there are no extraneous circumstances affecting the weight of their testimony. Am.Jur. Vol. 20, p. 1037, Sec. 1186.

The testimony adduced by libelant's witnesses in reference to the happening of the collision was positive-affirmative, amply supported by the Royal Oak's records and other exhibits, and was indeed convincing.

The testimony offered by respondent's witnesses in the same respect was negative. Moreover, the latter emanated from witnesses such as Mate Oscar Piñero, whose contradictions deprived his testimony of all credibility; pilot Camilo Martínez, who heard nothing, knew very little, because of his severe deafness, and Capt. Cuyler, who at the time of the trial did not appear to have any knowledge of what had happened on the day of the accident beyond what appeared in the smooth log, prepared by his mate. No rough log was kept. His testimony as to the hour when his Tug approached the ROYAL OAK to assist its undocking, as to the angle of approach, etc., was at odds with that of Mate Piñero.

I do not give much credit to the testimony of any of these witnesses as regards the happening of the accident. My impression is that they were not telling the truth, and that they knew they were concealing something.

■ The fact that most of the testimony for the libelant consisted of depositions, does not deprive it from receiving the same fair consideration as if the deponents had been present in court.

See: 26A C.J.S. Depositions § 96, p. 449; Am.Jur. Vol. 16, p. 746.

The said depositions were in complete harmony with the Rough Deck Log of the Royal Oak (Exh. 3 Lib.), the Bell book of the same vessel (Exh. 4 Lib.), and the two depositions of Robert Murray (Exh. 2 and 2A Lib.). Mr. Murray had acted as agent for the respondent in connection with the survey of the damages suffered by the Royal Oak in consequence of the accident here in question.

I have considered libelant's evidence in reference to the happening of the collision as more logical, harmonious, credible, and convincing than that of the respondent.

It must further be borne in mind, that as testified by Capt. Potts, General Manager of the respondent, his company is libelant's agent in all the ports of Puerto Rico.

My findings of fact, as regards the happening of the collision are based on the above criteria, and these are being filed jointly with the filing of this memorandum.

## II

■ As regards the total amount of the loss, libelant's evidence has not been contradicted in any way.

The testimony and exhibits show that libelant's total expense amounted to $18,287.43.

Mr. Murray, who acted as agent for the respondent in connection with the survey of the damages, positively admitted that all items of expense charged by libelant were fair and reasonable in the trade.

All that respondent contends, in connection with said expenses, is that some of them were not incurred exclusively in connection with the repairs made necessary by the collision here in question, because although libelant put its vessel in dry dock to repair the damages caused by the present collision, nevertheless oth-

er repairs, derived from other accidents, were made on the vessel while she was in dry dock and, therefore, respondent claims that the expenses in connection with the drydocking, gas freeing, towing, etc., should have been prorated, shared, or split among the different accidents and that, therefore, respondent should be benefited by the windfall that the ship owner got from making all the repairs at the same time.

The answer to this is that the libelant is not bound to share with the respondent the incidental benefit that it gets by making all the repairs at the same time. If it had undertaken to make only the repairs required from the present accident, it would have incurred in the same expenses for drydocking, gas freeing, towing, etc., and would have been entitled to be reimbursed exclusively by the respondent. If it gets a windfall by undertaking to make other repairs at the same time, respondent has no right to share in such windfall. See: Clyde S. S. Co. v. City of New York, 20 F.2d 381, (2 Cir. 1927) H.N. (1).

Moreover libelant's total expense appears to be $3,287.43 over and above what it is claiming in its libel and is being awarded by this Court in its decree herein.

What is said above amply supports the findings of fact which the Court makes and the conclusions of law it has arrived at in this connection.

### III

As regards this last issue, the case of Bisso v. Inland Waterways Corporation, 1955, 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911, fully supports my conclusion of law that affirmative defense No. II of respondent's amended answer must be denied. Respondent's alleged Towage Contract as regards the conditions referred to in said defense is unenforceable and invalid under the holding of said case.

Findings of Fact, Conclusions of Law, and Decree for libelant are being filed jointly with this memorandum.

## FINDINGS OF FACT

1.—The libelant, Cities Service Oil Company, was at all times herein in these Findings mentioned, and now is, a Corporation existing under and by virtue of the laws of the Commonwealth of Pennsylvania, with its principal office and place of business in the City and State of New York.

2.—The respondent, Puerto Rico Lighterage Company, was at all times herein in these Findings mentioned, and still is, a corporation organized and existing under and by virtue of the laws of the Commonwealth of Puerto Rico with its principal office and place of business in the city of San Juan of the said Commonwealth of Puerto Rico.

3.—The libelant was at all times herein in these Findings mentioned, and still is, the owner and operator of the SS ROYAL OAK.

4.—The respondent was at all times herein in these Findings mentioned, the owner and operator of the Tug CHARLES E. DUNLAP.

5.—The Tug CHARLES E. DUNLAP was, at the time of the filing of the libel, as well as during the pendency of process herein, within this District and within the jurisdiction of this Court.

6.—On August 23, 1956, the SS ROYAL OAK was docked at Pier No. 10 in the harbor of San Juan, Puerto Rico. Pursuant to an agreement between the libelant and the respondent, respondent's Tug CHARLES E. DUNLAP, then and there under the operation and control of the said respondent, was assigned to assist in the undocking of the SS ROYAL OAK and to turn said vessel in the harbor so that she could proceed to sea.

7.—At about 11:43 A.M. on said August 23, 1956, while coming alongside the SS ROYAL OAK, to so assist it in its undocking, the Tug CHARLES E. DUNLAP came into collision with the starboard side of the said vessel, causing the ROYAL OAK to sustain serious and substantial damage as follows:

Indent near No. 8 starboard tank. Damage at the starboard side in way of

No. 8 starboard wing tank. The J-strake, plate No. 13, set in and indented in two locations, at after part of plate. The K-strake, plate No. 13, slightly indented on lower seam, at after part of plate. Internal damages: The bulkheads between 8 and 9 starboard wing tanks were buckled in the way of the indented shell plating; four shell longitudinals were buckled in way of the damaged shell plating; the after shell web was buckled in way of the damaged shell plating. (Exh. 2 Lib. pp. 7–8, 12, Exh. 3 Resp. and Exhibits 12, 13, 14, and 15 Lib.).

8.—The aforesaid collision and the damage resulting therefrom were not caused or contributed to by the fault or neglect of the libelant or those in charge of the ROYAL OAK but were caused wholly by and due solely to the fault and negligence of the respondent and those in charge of the Tug CHARLES E. DUNLAP.

9.—Respondent's said negligence consisted in the following:

(a) The master, officers, crew, and any others in charge of respondent's Tug at the time were inattentive to their duties and to the mission which had been entrusted to them, as regards the position, angle of approach, and speed at which they improperly undertook to approach the vessel to assist it in its undocking.

(b) In failing to operate the engines properly so as to avoid collision with the ROYAL OAK while so approaching it.

(c) In failing, through its said agents to take any and all actions necessary to avoid coming into collision with the ROYAL OAK, as I find the Tug CHARLES E. DUNLAP to have violently done.

(d) In failing, through its said agents properly to assist in the maneuver of turning the SS ROYAL OAK without causing damage to said vessel and thus coming in collision with its starboard side.

(e) In that those in charge of respondent's Tug at the time of said accident were not competent to undertake the particular operation entrusted to them at the place where the Tug was required to operate and with the type of equipment they were using therefor.

10.—The loss sustained by libelant as a proximate result of said collision consisted in the expenses it incurred in repairing all the parts of the SS ROYAL OAK described in Finding of Fact No. 7, which were damaged by the collision, and other substantial expenses necessarily incurred as a result of the collision.

All said expenses, as per the uncontradicted evidence of record, were the following:

A—Amount paid to the Todd Shipyards Corporation (Exh. 8 Lib.) as agreed by the Surveyors. (Lib. Exhibits 12, and 14, Resp. Exh. 3.)—$6,550.00.

B—Respondent's share, as per Mr. Murray's deposition of June 13, 1963, (Exh. 2 Lib. p. 17) of the bill for $555.00 of the Salvage Association of London. —$65.50.

C—Bill of the American Bureau of Shipping covering its expenses on its survey of the damage involved in this case. (Exh. 17 Lib.)—$70.00.

D—Pilotage bills (Exhibits 18A, B, and C Lib.) covering pilotage from Bolivar Roads to the shipyard and back to sea following repairs.—$131.25.

E—Towage bills (Exhibits 19 and 19B Lib.) for towage services in assisting the SS ROYAL OAK on and off the drydock. —$415.00.

F—Gas-freeing bill (Exh. 20 Lib.).— $4,000.00.

G—Shipyard charges for gas free certificate. (See Exh. 2 Lib. pp. 22, 23). —$300.00.

H—Drydocking Charge made by the shipyard. (See Exh. 2 Lib. p. 23).— $5,895.68.

I—General Services charges made by the shipyard for shorepower and water for fire protection. (See Exh. 2 Lib. p. 23).—$270.00.

J—Charge made by the shipyard for Line Handlers. (Exh. 2 Lib. p. 23).— $90.00.

K—Charge made by the shipyard for pilot services and tow boats in shifting the ROYAL OAK within the yard (Exh. 2 Lib. p. 24).—$500.00.

Thus, the total expenses of libelant amounted to $18,287.43.

Although the total damages suffered by libelant amounted, as above found, to the sum of $18,287.43, libelant in its libel has only claimed the amount of $15,000.00.

From the above Findings of Fact, the Court arrives at the following:

## CONCLUSIONS OF LAW

I—This Court has jurisdiction of this civil case of admiralty pursuant to Section 1333(1), Title 28 U.S.C.A.

II—Pursuant to a valid agreement between the libelant and the respondent, the latter undertook on August 23, 1956, in the harbor of San Juan, Puerto Rico, to assist with its Tug CHARLES E. DUNLAP in the undocking of libelant's SS ROYAL OAK and to turn said vessel in the harbor so that she could proceed to sea.

III—Respondent was guilty of fault and negligence in the performance of its aforesaid agreement with the libelant, thus causing its said Tug CHARLES E. DUNLAP to come into collision with libelant's vessel SS ROYAL OAK which thereby sustained serious and substantial damage incurring in a total loss therefor, which libelant has limited to $15,000.00.

IV—The aforesaid collision and the damage and loss resulting therefrom were not caused or contributed to by any fault or neglect of the libelant or those in charge of its vessel the SS ROYAL OAK.

V—Affirmative defense No. II alleged in respondent's amended answer is not enforceable against the libelant herein and the conditions of respondent's Towage Contract on which it is made to rest must be held to be invalid, as the Court hereby so holds on the authority of Bisso v. Inland Waterways Corporation, (1955) 349 U.S. 85, at pp. 93–95, 75 S.Ct. 629, 99 L.Ed. 911.

VI—Respondent is wholly liable to the libelant in the full amount of $15,000.00 claimed by libelant.

VII—Respondent is further liable to the libelant for interest on said principal from the date of the filing of the libel herein until said principal is fully paid, at the legal rate of six percent per annum.

VIII—Respondent is further liable to libelant in costs, not including proctor's fees.

A decree will be rendered accordingly.